## CITY OF LOWELL *vs.* OTIS ALLEN.

**A.** bound himself by written contract to deliver to a city the lumber and timber required for building a bridge, according to certain specifications and within a specified time; subject to inspection by the building committee, and rejection if found to be not in accordance with the specifications.  The contract contained this provision: "And it is distinctly agreed and understood that if any portion of this timber is not delivered or is rejected in accordance with this agreement, the city may supply the deficiency in such manner as the said committee may deem expedient, and any extra cost incurred by the city in obtaining the same over and above the price agreed to be paid under this agreement for the same, may be deducted from the money due the said A., and shall be paid by him to the city."  A. having failed to deliver either the quantity or quality stipulated, and an action having been brought against him to recover damages incurred by the city in supplying the lumber and timber from elsewhere, *Held*, 1, that the city were not limited to retaining such sums as they might have in their hands, due to the said A. for lumber supplied by him and accepted; 2, that in supplying the deficiency the city were not bound to procure exactly the same kind and quality of lumber as A. had agreed to furnish, but they might recover if, acting fairly and in good faith, with reasonable care and diligence, in procuring lumber as nearly like that which A. had agreed to furnish as was possible within a reasonable time, they procured lumber substantially the same.

CONTRACT brought to recover damages sustained by the plaintiffs by reason of the defendant's failure to furnish lumber and timber for building a bridge, in accordance with his written agreement.

The written agreement, after providing that the defendant should furnish to the plaintiffs the lumber and material required for the rebuilding of a bridge over Merrimack River, according to certain specifications and schedules annexed, at such places in Lowell as might be directed from time to time by the building

committee, and that the lumber should be inspected by the com-
mittee before its acceptance by the city, and all lumber offered
for acceptance, and not in accordance with the schedules and
specifications, might be rejected, and that the delivery of the
lumber should begin by a certain date and be completed by a
certain other date, contained this provision :

" And it is distinctly agreed and understood by the parties to
this contract, that if any portion of this timber is not delivered,
or is rejected in accordance with this agreement as hereinbefore
stated, the city of Lowell may supply the deficiency in such
manner as the said committee may deem expedient, and any
extra cost incurred by the city in obtaining the same over and
above the price agreed to be paid under this agreement for the
sum, and any damages accruing to the city by reason of such
delay, may be deducted from the money due the said Allen, and
shall be paid by him to the city."

The specification for a portion of the lumber was as follows :
" To be sound, old growth, white pine, entirely free from wane,
shakes, loose knots, and all knots more than two [inches] in di-
ameter, and free from sap exceeding one inch either way from
the corner, and to be accurately sawed."

The declaration, after setting forth the contract, averred that
the defendant failed to deliver said lumber as agreed, and that
the city supplied the deficiency in accordance with the terms of
the contract, and were obliged to furnish a large amount at an
expense of $1700 additional cost thereof, exclusive of a sum
credited to the defendant for such lumber as had been furnished
by him and accepted.

At the trial in this court, before the chief justice, it appeared
that a large quantity of lumber delivered by the defendant was
rejected, and the defendant introduced evidence tending to show
that some portion of this was rejected because it was not free
from sap exceeding one inch from either corner, as well as for
not conforming to the contract in other respects ; and also that
the lumber purchased by the plaintiffs to supply the deficiency
under the defendant's contract was not so good as his lumber,
and that some of it had more than one inch of sap. The

defendant also introduced evidence tending to show, as he contended, that the prices paid in supplying the deficiency were too much.

The defendant requested the court to instruct the jury that if the plaintiffs elected to supply the deficiency, as is provided In the contract, and to deduct the extra cost in obtaining the same, over and above the price agreed to be paid by the contract for the same, from the money due to him under the contract, and supplied the same in that way, they would be confined to that remedy, though inadequate, and could bring no action for the balance; and that if the plaintiffs undertook to supply the deficiency of the lumber provided for in the contract, which he failed to deliver, or which was rejected in accordance with the contract, and to claim of him the extra cost incurred by the plaintiffs in obtaining the same, over and above the contract price, they must supply said deficiency according to said contract and specification, and free from sap exceeding one inch either way from the corner; and they would not be entitled to recover of him as supplying said deficiency under the terms of the contract, the extra cost incurred in obtaining any of said lumber which was not free from sap exceeding one inch either way from the corner.

The chief justice refused to give these instructions; and instructed the jury that the right to deduct from the sum due to the defendant, damages or loss sustained by the city, if incurred by the city, did not exclude them from a further remedy to recover additional damages, if any, in this action; and if the jury were satisfied that the city had sustained other and further damages beyond the sum due to the defendant for the lumber which he furnished, and which was received and accepted by the city, such additional damages might be recovered in this action; that the defendant was bound to perform the contract according to its terms; that in the event which happened of the failure of the defendant to supply the lumber according to the contract, the city had a right to supply the deficiency, and to recover the additional cost of doing so of the defendant; that in supplying the deficiency the city would not be bound to procure exactly

the same kind and quality of lumber as the defendant had agreed to furnish, but only such as was substantially the same in kind and quality, and if the lumber procured by the city was substantially like that which the defendant had agreed to furnish, it would not prevent a recovery in this action, although some of it was not free from sap exceeding one inch each way from the corner; that the city were bound to act fairly and in good faith, with reasonable care and diligence, in supplying the deficiency with lumber as nearly like that which the defendant had agreed to furnish as was possible to procure within a reasonable time, and if the city did so act, and did procure lumber substantially the same as that which the defendant had agreed to supply by his contract, they could maintain this action to recover such sum in damages as they had sustained by his breach of the contract, which would be the cost of the lumber purchased by the city to complete the bridge, less the amount due to him for lumber which he had supplied, and which had been received and accepted by the city under the contract.

The jury returned a verdict for the plaintiffs, with $1692.09 damages; and the defendant alleged exceptions.

*D. S. Richardson,* for the defendant. The measure of damages for non-delivery of the lumber would be the value at the agreed time of delivery. 2 Greenl. Ev. § 261, *n.* 1. The plaintiffs having elected the remedy provided in the contract, giving them a different measure of damages from that provided at common law, are confined to that remedy, and cannot say that it was inadequate. *Butler* v. *Hildreth,* 5 Met. 49. If the plaintiffs could reject lumber because not free from sap exceeding one inch either way from the corner, that created a deficiency which could not be supplied except by lumber conforming to the contract. The court gave one rule to the plaintiffs in rejecting lumber, and an entirely different one in supplying the deficiency. The contract provided for a supply of, and not a substitute for, lumber found deficient. The plaintiffs do not sue for a general breach of contract, but for the price paid for lumber bought to supply a deficiency according to the specification. They cannot recover this price, because a portion of the lumber

so bought by them did not conform to the specification in an essential particular, namely, as to being free from sap; tha being the defect for which they rejected the lumber that made this deficiency

*T. Wentworth,* for the plaintiffs, cited *Peters* v. *Whitney,* 23 Barb. 24; *White* v. *Mann,* 26 Maine, 361; *Robinson* v. *Fiske,* 25 Maine, 401; *Washburn* v. *Gould,* 3 Story R. 162.

HOAR, J.    The court are all of the opinion that the rulings of the chief justice at the trial were right, and that judgment should be entered upon the verdict.

The agreement of the parties to the contract established a measure of damages for its violation, which makes it wholly unnecessary to consider what would be the legal rule in the absence of such express stipulation.    The contract was for the delivery of a certain quantity of specific kinds of lumber and timber for building a bridge.    The contract recites that "it is distinctly agreed and understood by the parties to this contract, that if any portion of this timber is not delivered, or is rejected in accordance with the agreement as hereinbefore stated, the city of Lowell may supply the deficiency in such manner as the said committee may deem expedient, and any extra cost incurred by the city in obtaining the same over and above the price agreed to be paid under this agreement for the same, and any damages accruing to the city by reason of such delay, may be deducted from the money due the said Allen, and shall be paid by him to the city."    The defendant did not deliver all the lumber which he had agreed to deliver; and a part of that which he did deliver was rejected for not being of the quality which the contract required.

The first ground of defence is contained in the prayer for instructions which was made and refused, that the only remedy of the plaintiffs is by retaining in their hands the amount due for lumber supplied and accepted.    But the contract expressly provides that any extra cost incurred in supplying the deficiency not only "may be deducted from the money due the said Allen," but it is added "and shall be paid by him to the city."    It may be deducted, that is to say, if it can be; but at all events it shall be paid.    Any other construction would leave the plain-

City of Lowell *v.* Allen.

tiffs without remedy, if the defendant had wholly refused to perform his contract, so that nothing would have become due to him from which a deduction could be made.

The other objection to the rulings at the trial is based upon the assumption that the plaintiffs, if they undertook to supply the deficiency caused by the defendant's failure to perform his contract, must procure exactly the same quality of lumber which the defendant had agreed to furnish, and could not recover compensation for the cost of any other. This is undoubtedly true as a general proposition ; but we do not think it is to be applied with literal and absolute exactness. The provision of the contract must be reasonably construed, in reference to its subject matter, and to the circumstances under which it was made. The plaintiffs had a bridge to build, to be completed within a certain time. It required a large amount of lumber of a particular kind. In supplying it, it was their duty to conform as nearly to the contract as possible. But the rule which the court gave was the practical and just one, that the city was bound to procure lumber " substantially the same in kind and quality " with that which the defendant had failed to supply. It might not be in their power to find in the market the necessary quantity which should exactly correspond to it in every particular. But if they acted in good faith, and with reasonable care and diligence, a slight deviation in quality would not be a departure from the limits which the contract allowed, to " supply the deficiency in such manner as the committee may deem expedient." Especially would this be so, when the difference in quality from that which the contract required was occasioned by the purchase of some small part of the lumber of inferior value. This could not be prejudicial to the defendant. He has surely no reason to complain of that which could not increase, and would probably diminish, the sum which he has to pay. Under the instructions given to the jury, the plaintiffs cannot have recovered more than the actual cost to them of lumber which was substantially the same as that which the defendant had agreed to supply ; and any inferiority in the quality has been considered in the assessment of damages, so that it is their loss, and not his. *Judgment on the verdict.*